# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-60145-CR-SCOLA/TORRES

UNITED STATES OF AMERICA,

     Plaintiff,

v.

BRITTANY KING,

     Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

     This matter is before the Court on Brittany King's ("Defendant") motion to suppress [D.E. 19] any and all post-arrest statements made by Defendant as an alleged violation of her constitutional right to an attorney under *Miranda v. Arizona*, 384 U.S. 436 (1966).[1]  The United States (the "Government") responded on August 30, 2017.  [D.E. 31].  An evidentiary hearing was held on this matter on August 31, 2017 and therefore Defendant's motion is now ripe for disposition.  Having carefully considered the Defendant's motion [D.E. 19], the Government's response in opposition [D.E. 31], the testimony of the witnesses, the oral arguments of counsel,

---

[1]    On August 24, 2017, the Honorable Robert N. Scola referred Defendant's Motion to the undersigned Magistrate Judge for disposition.  [D.E. 20].  Trial in is scheduled to begin on September 5, 2017.

and being fully advised in the premises, the Court recommends that the Defendant's motion be **DENIED** for the reasons set forth below.

## I.     BACKGROUND

On May 17, 2017, officers of the Sunrise Florida Police Department executed a search warrant at 6961 N.W. 24th Court in Sunrise, Florida.   At that location, four individuals were located in or near the residence, including the Defendant.   When approaching the location, Defendant fled to the rear of the dwelling as officers entered the front of the residence.   She was then apprehended with another individual in the rear patio.   At that time, officer Eric Fernandez with the Sunrise Police Department orally provided Defendant her *Miranda* rights and Defendant understood those rights.   The officer credibly testified that he provided those warnings based on the pre-printed card utilized by his department.   After orally waiving her *Miranda* rights, Defendant made incriminating statements in the presence of Officer Fernandez.

Shortly thereafter, Defendant was arrested and charged with the possession of counterfeit notes in violation of Title 18, United States Code, Section 472 and taken to the Sunrise Florida Police Department.   Once at the police department, *Miranda* warnings were administrated again and administered by a different Sunrise police officer, Roy Morlock, who administered another round of *Miranda* warnings.   These warnings were provided orally and also through a written waiver form that Defendant reviewed with Officer Morlock and signed.   Each specific

warning was also signed and the form required her to indicate with a "yes" or "no" if she agreed to waive that right. Defendant did so. In addition, the officer reviewed each item with her before she signed it. Then the officer summarized the entire warning and asked her to sign the form, which Defendant did. The entire process was captured on the Department's video system, which allowed the Court to review the video and audio of Defendant's waiver.

After the Miranda process was complete, the officer asked her if she wished to speak with them and Defendant indicated that she did. Defendant was then sworn and provided statements to the two officers present. The interview concluded after Defendant indicated that she wished to use the restroom. The officers ultimately concluded their questions and left the Defendant in the interview room for a period of time. Thereafter she was allowed to use the restroom.

Then, after being contacted by Sunrise police officers as to their investigation, Secret Service Agent Laughlin arrived at the Department to investigate. He then saw the Defendant and, now for the third time that afternoon, administered *Miranda* warnings for his purposes. This warning was provided orally and confirmed in a written waiver form that Defendant again executed. This process was not video or audiotaped. But Defendant knowingly waived her rights and willingly provided statements to Agent Laughlin. Neither he nor the other officers who encountered Defendant found her to be under the influence of alcohol or drugs

when waiving her *Miranda* rights, nor did they have any other reason to believe Defendant did know or appreciate the consequences of her multiple waivers.

## II.       ANALYSIS

In this case, Defendant argues that the Court should suppress all post-arrest statements while Defendant was in custody as a violation of *Miranda*.   Defendant suggests that she was never advised of her *Miranda* rights and that any statement made should be suppressed as a violation of her constitutional rights.[2]   Because the Government bears the burden of proving that any statements by Defendant were not illegally obtained and allegedly cannot meet that requirement, Plaintiff contends that all post-arrest statements must be suppressed accordingly.

The Government argues that the Defendant's motion lacks merit because she was properly informed of her *Miranda* rights and voluntarily and intelligently waived those rights *three* times.   First, Defendant purportedly waived them during her initial arrest.   Second, the Government suggests that, upon being transported to the Sunrise Police Department, Defendant was placed in an interview room where she was again advised of her *Miranda* rights while being audio and video recorded and consented to questioning.   And finally, the Government argues that, during the non-recorded interview with Agent Laughlin, Defendant agreed to waive her

---

[2]        In fact, Defendant denies making any statements whatsoever.

constitutional rights for a third time and proceeded to speak with the agent without an attorney present.

The U.S. Supreme Court in *Miranda* "established that custodial interrogation cannot occur before a suspect is warned of his rights against self-incrimination" under the Fifth Amendment. *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007). As such, the right to *Miranda* warnings attaches at the moment a custodial interrogation begins because the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V; *see also United States v. Acosta,* 363 F.3d 1141, 1148 (11th Cir. 2004). This means that "[s]tatements made in violation of *Miranda* are not admissible at trial." *United States v. Qose*, 2017 WL 510429, at *2 (11th Cir. Feb. 8, 2017) (citation omitted). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation omitted).

"[W]hether a suspect is 'in custody' is an objective inquiry." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011). Subjective beliefs of the defendant and the

officer on whether a defendant was free to leave are irrelevant because "the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." *United States v. Peck*, 17 F. Supp. 3d 1345, 1358 (N.D. Ga. 2014) (citing *United States v. Brown,* 441 F.3d 1330, 1347 (11th Cir. 2006) (quotations, citations, alteration, and emphasis omitted)). In other words, the only relevant inquiry is how a reasonable person in the suspect's position understands the situation.

The Supreme Court has provided a number of factors to consider whether a defendant is in custody, including the location of the questioning, *Maryland v. Shatzer*, 559 U.S. 98, 110 (2010), its duration, *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984), statements made during the interview, *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977), the presence or absence of physical restraints during the questioning *N.Y. v. Quarles*, 467 U.S. 649, 655 (1984), and the release of the interviewee at the end of questioning, *Beheler*, 463 U.S. 1121, 1122-23. In addition to the aforementioned factors, the Eleventh Circuit has provided several other factors to consider, "including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." *United States v. Street,* 472 F.3d 1298, 1309 (11th Cir. 2006) (quotation omitted). In considering the totality of the circumstances, the Eleventh Circuit has held that "[n]o particular fact in the 'custody' analysis is outcome determinative—[the court] simply weigh[s] the totality of the circumstances."

*United States v. Lall,* 607 F.3d 1277, 1284 (11th Cir. 2010) (quoting *Brown*, 441 F.3d at 1349) (alterations added)).

And although the location itself is not dispositive in determining whether a defendant is in custody, "[c]ourts are *much less likely* to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings,' such as the suspect's home." *United States v. Ritchie,* 35 F.3d 1477, 1485 (10th Cir. 1994) (quoting 1 W. LaFave, *Criminal Procedure* § 6.6(e), at 496 (1984 & 1991 Supp.)); *see also United States v. Newton,* 369 F.3d 659, 675 (2d Cir. 2004) (noting that "absent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial"); *United States v. Lanni,* 951 F.2d 440, 442 (1st Cir. 1991) (stating that a court should consider whether the suspect was questioned in "familiar or at least neutral surroundings" (quotation marks omitted)); *United States v. Helmel,* 769 F.2d 1306, 1320 (8th Cir. 1985) (finding it relevant in determining that defendant was not in custody that the questioning occurred in the defendant's home, "on his own turf") (quotation marks omitted).

Here, there is a dispute as to whether the Defendant received proper *Miranda* warnings during her custodial interrogations with law enforcement. On one side, Defendant claims that she never received any *Miranda* warnings and denies making any statements to law enforcement. On the other hand, the Government suggests that Defendant waived her *Miranda* rights on three separation occasions – the latter two of which were recorded on audio and video.

In order to stop a custodial interrogation, a defendant must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity" there is no requirement that "the officers stop questioning the suspect." *Davis v. United States*, 512 U.S. 452, 459 (1994) (citing *Moran v. Burbine,* 475 U.S. 412, 433, n.4 (1986) ("[T]he interrogation must cease until an attorney is present *only* [i]f the individual states that he wants an attorney") (citations and internal quotation marks omitted)). In other words, the right to counsel under *Miranda* "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). Therefore, if a defendant makes an ambiguous or equivocal reference to an attorney, law enforcement is not required to cease the questioning. *See id.* ("[T]he *likelihood* that a suspect would wish counsel to be present is not the test for applicability of *Edwards*"); *Edwards v. Arizona*, 451 U.S. 477, 485 (1981) (finding it impermissible for authorities "to reinterrogate an accused in custody if he has *clearly asserted* his right to counsel") (emphasis added).

After full consideration of the arguments presented, the Court finds that no violation of the Defendant's constitutional rights occurred because Defendant waived her *Miranda* rights on three separate occasions. The credible testimony of the officers shows that Defendant was read her rights during her initial arrest and

waived them again at the Sunrise Florida Police Department on audio and video recordings. More specifically, for the third waiver, Defendant signed a *Miranda* waiver form in the presence of Agent Laughlin and indicated with her signature that she understood all of the rights provided. Agent Laughlin credibly testified that Defendant knowingly and voluntarily waived her *Miranda* rights in his presence.

Moreover, from a review of the record, Defendant appeared to understand all the questions asked of her and the detectives did not believe that the Defendant was under the influence of drugs or alcohol. In fact, the detectives testified that there was no indication of any kind that Defendant did not understand her *Miranda* rights (1) at the location of the arrest, (2) at the police department under audio and video recordings, or (3) on the *Miranda* waiver form.

Because the unrebutted evidence demonstrates that the Defendant voluntarily signed a valid *Miranda* waiver form, that waiver was sufficient to include all subsequent conversations with law enforcement that day. *See Ballard v. Johnson*, 821 F.2d 568, 571 (11th Cir. 1987) (finding that the defendant properly executed a waiver of his Miranda rights during the first interrogation, and that waiver was valid for a subsequent interrogation that occurred later the same day); *Martin v. Wainwright*, 770 F.2d 918, 930 (11th Cir. 1985), *opinion modified on denial of reh'g*, 781 F.2d 185 (11th Cir. 1986) ("Although providing Martin with full *Miranda* warnings on July 11 undoubtedly would have been a better and safer course, we cannot say that Glover's failure to rewarn Martin renders the confession

inadmissible under *Miranda*."); *Biddy v. Diamond,* 516 F.2d 118 (5th Cir. 1975) ("The question is whether the full *Miranda* warnings were required on December 27 and 28, even though in response to the police question petitioner expressly stated that she remembered her rights as previously explained to her. We think not."); *United States v. Anthony,* 474 F.2d 770, 773 (5th Cir. 1973) ("[T]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them.").

As for Defendant's remaining contentions, in particular that she was not allowed to receive a bathroom break during questioning (for a length of time of at least 52 minutes) Defendant's arguments are unpersuasive. Indeed, the record shows that the incriminating statements were made *before* she ever requested the bathroom break and that it had no impact on the waiver of her *Miranda* rights. Nor did Defendant present any evidence at the hearing that the delay at all affected her ability to knowingly waive her rights or, otherwise, affect the voluntariness of her statements to the officers. Accordingly, Defendant's motion lacks merit and should therefore be **DENIED**.

### III.     CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to suppress her post-arrest statements [D.E. 19] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until September 5, 2017, to submit objections to this Report and Recommendation, if any, with the

District Judge. Failure to timely submit objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of September, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge